May it please the Court. My name is Kevin Little, and I am arguing on behalf of the appellant in this matter, the California Association for the Preservation of Gam v. I'd like to reserve approximately five minutes of my time for any rebuttal. Okay. Watch your clock. Thank you. As the Supreme Court has recently made clear, when you're looking at, even in the context of a facial challenge, when the statute of limitations begins to run, it doesn't begin to run from the enactment date. It begins to run from any harm that arises from that statute. Harm is the indicator for timeliness, not enactment. In this case, it's extremely clear, as was because we're dealing with a pleadings challenge only, not an evidentiary challenge, that the plaintiffs alleged that this statute was causing continuing harm every day that it was in existence because it effectively deprived the plaintiff's constituents of their rights to own and possess roosters. The district court dismissed these claims only based on the November 8, 2017, enactment date, without regard to those allegations, which we believe was error and requires reversal, particularly based on the supplemental authorities we've submitted, the recent Supreme Court decision. Well, the Supreme Court case is an APA case, and it starts off by saying this is only an APA case. This is true. It does contain language that's helpful to you, but I don't think it controls this case. I don't. Judge Thomas, I don't believe it controls this case, but I think its reasoning is very enlightening, and its reasoning is very similar to the Shimozu case that this court decided in 2019 that was outside of the APA context, which essentially arrived at the same conclusion that the enforcement date is what dictates the statute of limitations analysis, not the enactment date. And I think there's some language in that case that even says, otherwise, if the contrary were true, any statute would effectively be insulated from review more than, in California's case, two years after its enactment. Well, correct me if I'm wrong, but at least on the state of the current record, there is no record of enforcement against any of the members of your organization. True? True. As a matter of fact, I believe in one of the dismissal motions, the county of Stanislaus went as far as to say that it is not intending on enforcing this statute, which leads one to wonder why it was ever enacted in the first place. But this court has decided in many cases, including recently in a case that was brought by the attorney general just a couple of months ago, that a public entity cannot insulate offending provisions from review simply by representing to a court that it's not going to enforce them. And we believe that that's the situation here. How is your claim a facial one as opposed to any application of it to any member? I mean, what does it do facially that impacts you that then allows you to bring a facial challenge? Your Honor, Judge Collins, this is a case where on its face this statute says, and this is a paraphrase, of course, but the statute itself is cited in the record and in the briefs, that only commercial farmers can legally possess our own roosters, no one else. And so we don't believe that we need to, and that's why we've desisted from our as-applied challenges on appeal, we don't believe that we need to talk about specific instances, specific owners, because the statute is so broad and its language is so clear that it prohibits any possession by anyone other than a commercial farmer, we believe. But it would seem for a facial challenge, I mean, one variety of a facial challenge is that the mere enactment of the law has an immediate impact on property values. Yes. You know, you pass a rent control ordinance and all of a sudden owning the apartment building goes down and in value that's a taking. Yes. That accrues at the time of enactment. You might have other types of facial challenges, but then you have to show it's unconstitutional in all of its applications, and it presents a significant merits problem, even if you don't have a statute of limitations problem, and the red brief raises this alternative argument that all of these claims fail on the merits. Your Honor, I understand that if you're making a facial challenge, you have to prove in any application that a statute would be unconstitutional, illegal in some contexts, but in this, because this is a civil rights case, unconstitutional. However, the statute itself, we believe we can show that, because in any application of this statute as to a citizen who is not a commercial farmer, the statute specifically says, as it was amended, that they are allowed to have zero roosters. And the allegations in the case are that each of the plaintiff constituents during the time, since the time that this statute has been enacted, have owned or possessed roosters and have been chilled in the exercise of those rights and have been required to transfer their property. So we believe that we meet the high standard for a facial challenge. One of the things that kind of puzzles me, and you can probably help me out with it, is at the end of the day, you have to satisfy the Penn central factors for regulatory taking. Yes. And you represent non-commercial owners. So how is this thwarting their investment-backed expectations? This is an issue that we attempted to address in the brief, and I'll be happy to attempt to clarify it. The Penn central doctrine for a regulatory taking cannot be so rigidly applied when we're talking about private non-commercial ownership, such as what's occurred here. But in other cases that we've cited, where even as with respect to non-commercial owners, a provision, an ordinance eliminates their entire bundle of rights. We believe that it satisfies the Penn central standard. What is the investment-backed expectation? Sorry to interrupt, but go ahead. There isn't any investment-backed expectation. There are owners' expectations, if you will, and analogous expectation of private ownership and enjoyment, but it certainly isn't an investment-backed expectation. I believe that the only other issue that is analytically distinct from those that I've addressed already would be the forfeiture issue. We also alleged in our complaint that the ordinances presented constitute an unconstitutional forfeiture of vested rights. And in dismissing that doctrine or that argument, the district court relied on state decisions that are very specific to the permit and licensing context and not the federal decisions that we've cited to the court. So we believe that that was an analytical error on the part of the court that also requires reversal. I'm happy to answer any other questions. Thank you, counsel. Good morning. May it please the Court. My name is John Whitefleet. I represent the County of Stanislaus in this matter. We ask that the Court affirm dismissal of this case. Ultimately, as with the other case, I'd like to start with the fact that this is about a local zoning ordinance that was adopted merely amending a prior ordinance. Does it apply to the entire county or just portions of the county? Just portions, Your Honor. And I think it goes to a portion of my argument, which is I think plaintiffs here, appellant, overstates what the ordinance actually applies to. One of the issues that I've always had with the case is where are the members that say they actually owned property within the agricultural zoning that this particular ordinance addresses, which is acreage that is limited in size because the acreage that they're referring to was consistent with the city plan and the county plan. Where is the land located relative? Like, can you describe what part of the county it is? So it's in the planning commission, Your Honor, which is at ER 122 through 146, where they talk about the background and the fact that there's several thousand parcels that are zoned in that particular area. And so it's throughout the county. And it's the idea that particular size properties are being restricted is consistent with the prior ordinance. And so this doesn't really change the ordinance as opposed to simply make express what was implied. And that really was more about, okay, when talking about small livestock on small acreages within the city landscape that they were saying that there's restrictions on not just roosters but other small livestock. And so the idea that we're talking about a 2017 amendment, what was not briefed by appellant was the procedural due process, the as-applied challenges, and ultimately that the district court found that the substantive due process and the takings claims were barred because they were not ripe. So focusing, though, on the facial challenge, the appellant asked this Court to look all the way to the newer case corner post from the United States. And as Justice Thomas pointed out, that doesn't apply. There's no need to look that far. Well, the Supreme Court did use some fairly sweeping language that supports their position. Your Honor, but the fact is — I realize it's confined to the ABA context, but — It is. And it was also in respect to the Federal Reserve Board issuing regulations. And I don't, frankly, know what their process is. But a local ordinance, subject to its process, requires a public notification, readings, commentary by the public, which his client did. His client presented a letter, which is at, I believe, the ER, starting at 147, that objected to the amendment on the ordinance. And so the — if, in fact, injury alleged when something occurs to the property, how is that any different than the enactment causing the injury here? Which is what, really, this Court did in Action Apartment Association v. Santa Monica. And the cases that have subsequently come here have all affirmed it's the enactment date that causes the injury on a facial challenge as opposed to as applied. Well, I mean, that might be true for certain types of facial challenges. The rent control example that I gave, which is, you know, what the Laval case was dealing with, where the very enactment of the statute affected a taking. But there are lots of other contexts in which the statute continues to have harm every day that isn't just sort of, you know, instantaneous one drop in the property value. And why can't you bring a facial challenge later? I mean, it may fail on the merits, but why can't you bring it later if it's still being applied to you? The distinction here, if you go, say, to what the Supreme Court said in Corner Post, that company didn't even exist when the Federal Reserve Board made its regulations. And so it was about a fee being applied to them. So once, and it makes sense, that once that fee is applied to them, then there's an injury. But when you're simply a property owner, and if the idea is, oh, the ordinance now has affected my property rights, it's effective upon an enactment. And then it goes to the Penn Central issues, because is it a per se taking or not? And that's where I think the distinction is, because in this case, it is not a per se taking. There is no appropriation. There's no going and saying, oh, the county is taking the roosters for their own use. It's not about, say, for example, the one case where it said, well, we're going to reserve that appellant wants to have this Court look at, reserve use of that land for a portion of the period of time. Right? So that's the entity actually going into the property, using the property. This is simply just a use regulation. And so do you intend to enforce the ordinance? I think that's a misstatement. The point was there's no allegations of any enforcement. No, I know that, but I'm asking you. Is the county intending to enforce the ordinance? I don't know, Your Honor. I don't know. And so — But I don't see why a claim that a statute is unconstitutional in all of its applications or in the First Amendment context that it's facially overbroad can't be brought five years after the enactment of the statute if on the day you want to engage in the activity, the statute makes it unlawful. I don't understand why that would be time-barred. Your Honor, because I don't think that's the allegations here. They're not saying that the statute, the ordinance itself, is unconstitutionally overbroad. And because it's — They've limited themselves. The reply brief gives away the as-applied challenges. It absolutely says that.  So we're down to facial challenges only. That may be an impossible merit standard for them to reach because it would mean that the statute for the particular constitutional claim at issue is unconstitutional in all of its applications. But I don't see why that claim can't be brought more than two years after enactment as opposed to a Laval-type regulatory taking that's effectuated, drops the value of the property on the day of enactment. Because, Your Honor, that would be, I think, number one, contrary to this Court's own pronouncements that the accrual on a facial challenge is on the enactment of the ordinance, number one. Number two, I think that would require this Court to apply a broader application of accrual in this type of context that's not warranted, because it's really just about the local land use. It would be different, I think, Your Honor, if, say, there was language in the statute that was unconstitutionally overbroad, and now somebody is challenging that. But that's not the case here. And so the idea that when an appellant had notice, went to the board, and said, we object to this ordinance, why allow them to wait beyond the two years ordinarily under 1983 that's applied to under CCP 335.1, and give them a pass and say, oh, no, no, that's okay, you're, you know, now that you've decided to really raise it, we're going to ignore the two-year statute of limitations. I don't think that's warranted in this case, Your Honor. So the other thing that I just wanted to raise is that on this forfeiture issue that plaintiff tried to claim in the reply and under the Barrett case about vested rights, and I don't think that is applicable in this case, because I think the district court properly talked about the fact that the statute in and of itself doesn't afford particular property rights, and never did in terms of that aspect of ownership of animals or the use on the property. But it's more about permitting. And so here's an affirmative statement from if, in fact, there were allegations, which plaintiffs cannot provide, that the county had said, oh, yes, you can use your land for some nonconforming use under a variance, say, for example. But that didn't happen in this case. And without that, there can be no vested right. And so unless the Court has further questions, I'll submit. Thank you, counsel. Thank you. Very briefly, Your Honors, I wanted to point out that the complaint, the First Amendment complaint, does contain allegations that the class that is represented by the organization does include constituent members who have become, who have been subject to enforcement of this statute or have come under its governance since September 9th of 2018, which is when the action was filed. So are these people actually on roosters? Yes. Yes, Your Honor. Or they intend to buy roosters, and they can't buy roosters? I mean, I'm not sure I understand what the harm is. The harm is, is the same way that you have the American Kennel Club, the same way that you have other organizations that love certain types of animals, these people love certain types of animals, as was indicated in the complaint. They go to shows, they breed them, they have conventions. Any notion of, like, vested rights is only for roosters as of, what, 2017? Because once that passes, you know, new people coming in, you know, you know that you can't have more roosters. So only the roosters you had in 2017 that are ultimately at issue in terms of vested and taking, am I right? I would disagree, Your Honor, because, and again, I would go back to Corner Post, the Flint v. Shimazu case from this circuit from 2019, that any harm that is caused by this offending ordinance triggers a new statute of limitations. That's our position. No, I'm just saying on the merits, how is it a taking if somebody says, from henceforward, you can't bring a rooster into the county at this property? I mean, if you have a rooster, then I understand you're claiming it's a taking. It may not have merit, but I understand. But if we just say, going forward, you can't do this, you know, and most of the roosters from 2017 are, what's the lifespan of a rooster is probably not more than 10 years, so. Right. And that's what I was going to say. Like any other biological creature, if you have chickens and you have roosters, you're probably going to have more animals that then would come under purview of this statute. So we believe this is different than, say, an article. These are living beings that progenerate. Thank you, Your Honor. Thank you, Counsel. This case is submitted.
judges: THOMAS, WARDLAW, COLLINS